Donald STORBECK, Plaintiff-Appellee,

v.

ORISKA SCHOOL DISTRICT # 13, and
James E. Marshall, Maynard Satrom,
Dean Karges, Darlene Trader, and
Bjarne Breske, Defendants-Appellants.

Civ. No. 9555.

Supreme Court of North Dakota.

March 22, 1979.

Ployhar, Thorson & Weisenburger, Valley City, for plaintiff-appellee; argued by Roger R. Weisenburger, Valley City.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendants-appellants; argued by John D. Kelly, Fargo.

PAULSON, Justice.

This is an appeal by Oriska School District # 13 from an order of the Barnes County District Court of July 26, 1978, granting Donald Storbeck ["Storbeck"], its former superintendent of schools, a preliminary injunction to prevent the School Board of Oriska School District # 13 ["Board"] from hiring a new superintendent. The district court granted the preliminary injunction on the ground that Storbeck had not been given proper notice by the Board that his contract would not be renewed for the 1978–1979 fiscal year. The Board contends in its appeal that it had given Storbeck proper notice pursuant to the North Dakota Century Code and his employment contract.

Storbeck served as superintendent of Oriska School District # 13 from July 1, 1973, until June 30, 1978. In addition to his duties as superintendent, Storbeck also taught one class during the school year.

On April 13, 1977, Storbeck signed a contract to serve as superintendent and to teach one class. The contract became effective on July 1, 1977, and was to continue for one year. On April 13, 1978, the Board met with Storbeck, asked for his resignation, and informed him that his contract would not be renewed for the 1978–1979 fiscal year. Storbeck was officially notified by letter on April 14, 1978, that his contract would not be renewed.

The Barnes County District Court granted Storbeck a temporary restraining order on June 22, 1978, to enjoin the Board from hiring a new superintendent and issued a preliminary injunction on July 18, 1978, following a hearing. The district court determined that because Storbeck taught one class he was a teacher within the purview of § 15–47–38, N.D.C.C., and was entitled to all of the notice and hearing provisions of that statute. The court further determined that the Board had not complied with § 15–47–38, N.D.C.C., when it terminated Storbeck's contract; that Storbeck's contract was renewed for the 1978–1979 fiscal year because it had not been properly terminated; and that the Board should be enjoined from hiring a new superintendent to replace Storbeck.

On August 21, 1978, the district court granted the Board's motion for a stay of execution and suspension of the preliminary injunction pending appeal to the Supreme Court. The following issues have been raised on appeal;

(1) Did the district court err in determining that Storbeck was a teacher within the purview of §§ 15–47–26 and 15–47–38, N.D.C.C., and was protected under the contract renewal provisions of § 15–47–38?

(2) Pursuant to Storbeck's 1977–1978 employment contract, was Storbeck entitled to receive ten days' notice that his contract would not be renewed for the following fiscal year?

(3) Was Storbeck's contract automatically renewed pursuant to § 15–47–27, N.D.C.C., because it had not been properly terminated?

Storbeck contends that he was a teacher and was entitled to the protections of the dismissal provisions of § 15–47–38, N.D.C.C. Subsection 5 of § 15–47–38, N.D.C.C., provides, in pertinent part:

"5. The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify such teacher in writing of such contemplated nonrenewal no later than April first. Such teacher shall be informed in writing of the time, which shall not be later than April seventh, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. Such teacher shall also be informed in writing of the reasons for such nonrenewal . . . ."

Section 15–47–26, N.D.C.C., which defines the term "teacher", provides:

"*Definitions.*—The term 'teacher,' as used in sections 15–47–27 and 15–47–28, shall be construed to include all teachers, principals, and superintendents in all public school districts within this state, and all persons employed in teaching in any state institution, except institutions of higher education. The term 'teacher', as used in section 15–47–38, shall be construed to include all teachers and principals in all public school districts within this state, and all persons employed in teaching in any state institution, except institutions of higher learning."

Pursuant to § 15–47–26, N.D.C.C., a superintendent is included in the definition of "teacher" for purposes of §§ 15–47–27 and 15–47–28, N.D.C.C., but is not included in the definition of "teacher" for purposes of § 15–47–38, N.D.C.C.

As the superintendent of schools, Storbeck was not entitled to the protections of § 15–47–38, N.D.C.C. However, we must consider Storbeck's claim that § 15–47–38 was applicable to him because he taught one class in addition to his duties as superintendent and, therefore, that he was a teacher and was entitled to the protections of the statute.

Section 15–47–38, N.D.C.C., purports to give certain procedural protections to teachers whose contracts are not renewed. Pursuant to § 15–47–26, N.D.C.C., however, school superintendents are not entitled to the same protections as teachers. Because Storbeck was both a superintendent and a teacher, we must determine whether § 15–47–38, N.D.C.C., was applicable to him.

■ In construing § 15–47–38, N.D.C.C., we will consider § 1–02–39, N.D.C.C., which provides:

"*Aids in construction of ambiguous statutes.*—If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:

1. The object sought to be attained.

2. The circumstances under which the statute was enacted.

3. The legislative history.

4. The common law or former statutory provisions, including laws upon the same or similar subjects.

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble."

In addition, according to *State v. Miller,* 146 N.W.2d 159, 165 (N.D.1966), any interpretation of a statute must be reasonable and consistent with the intent of the Legislature. *See State v. Odegaard,* 165 N.W.2d 677 (N.D.1969); and *Salzseider v. Brunsdale,* 94 N.W.2d 502 (N.D.1959).

■ The 1975 amendment to § 15–47–26, N.D.C.C., which specifically excludes superintendents from the protections of § 15–47–38, N.D.C.C., indicates that the Legislature believes that superintendents require fewer protections than do teachers. This view is consistent with the teacher-Board and superintendent-Board relationships, i. e., the superintendent is the administrative arm of the Board and has much more direct access to the Board to redress his grievances than does a teacher. Furthermore, because the superintendent and the Board must work together closely in the operation of the school district, the Board should be able to terminate the superintendent's employment without all of the procedural safeguards required when terminating the employment of a teacher.

Subsection 11 of § 15–29–08, N.D.C.C., authorizes a school board to employ a superintendent and states that "The superintendent may be required to act as principal or teacher in the school system of the district." Because this statute was in effect when §§ 15–47–26 and 15–47–38, N.D.C.C., were amended in 1975 the Legislature was cognizant of the fact that some superintendents would also serve as teachers. The Legislature, however, did not create a separate classification for superintendents who also caught classes.

We conclude that a superintendent who teaches classes in his district is a superintendent, not a teacher, for the purposes of § 15–47–38, N.D.C.C. Storbeck's duties as superintendent took precedence over his duties as a teacher of one class. His primary relationship with the Board was that of a superintendent, and not that of a teacher.

■ Because the Legislature has determined that the protections of § 15–47–38, N.D.C.C., do not apply to superintendents and because Storbeck was primarily a superintendent, we hold that the district court erred in its determination that Storbeck was a teacher and was entitled to the protections of § 15–47–38, N.D.C.C. We further hold that any person who is employed as a superintendent is entitled only to the employment provisions to which a superintendent is entitled, not those to which a teacher is entitled, even though the superintendent performs the additional functions of a teacher.

■ As a superintendent, Storbeck was protected under the provisions of § 15–47–27, N.D.C.C.,[1] which provides, in pertinent part:

"*Time for renewal of teachers' contracts.*—Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. . . . . ."

In the present case, Storbeck was notified in writing on April 14, 1978, that his contract for the following fiscal year would not be renewed. We conclude that the Board properly notified Storbeck in the manner required by § 15–47–27, N.D.C.C., when a school board does not renew a superintendent's contract.

Having determined that Storbeck was not a teacher, we next consider Storbeck's claim that a provision of his contract entitled him to ten days' notice if his contract were not going to be renewed for the following fiscal year.

Storbeck's 1977–1978 contract was executed on Form 17, a Teacher's Contract Form which was printed in 1971. The contract form contained blank spaces for filling in pertinent contract information and contained nine printed provisions, most of which made reference to provisions of relevant sections of the North Dakota Century Code that were in effect when the contract form was printed in 1971. Provision 3 of Form 17, on which Storbeck's second contention is based, provides:

"3. This contract continues in effect unless the teacher is notified in writing not earlier than February 15 and not later than April 15 that h__ services are not required for the ensuing school term. The teacher shall be given at least thirty days to reply to an offer of contract. Failure on the part of the teacher to accept said offer shall be deemed to be rejection

---

1. Pursuant to § 15–47–26, N.D.C.C., a superintendent is included within the definition of the term "teacher" as used in § 15–47–27, N.D. C.C., but not as used in § 15–47–38, N.D.C.C.

of the contract (§ 15–47–27 NDCC). *It is further provided that the school board notify the teacher in writing at least ten days prior to the time the board contemplates discharging the teacher or not renewing the contract.* The teacher may then request and appear at an executive meeting of the school board (at which the teacher may have representation) and obtain an explanation of the reasons for contemplating discharging or refusing to renew the contract (15–47–38 NDCC)." [Emphasis added.]

The ten-day notice requirement in Provision No. 3 of the contract was based upon § 15–47–38, N.D.C.C., as it existed in 1971. The statute was subsequently amended by the Legislature in 1973 and 1975. When Storbeck signed his 1977–1978 employment contract, the ten-day notice requirement set forth in Provision No. 3 of the contract was no longer included in § 15–47–38, N.D.C.C., for nonrenewal situations. In addition, we have already determined that, because Storbeck was a superintendent, the Board was not required to follow the provisions of § 15–47–38, N.D.C.C., in deciding not to renew Storbeck's contract.

Storbeck claims that Provision No. 3 was a valid part of his contract, even though the ten-day notice requirement provision of § 15–47–38, N.D.C.C., was not in effect when the contract was signed. He contends that the Board granted him more rights than he would have had under the applicable laws that were in effect on April 13, 1977.

█ In interpreting Storbeck's contract we must consider the principle of contract law that the existing law at the time of the formation of the contract becomes part of the contract. As was stated in *Schue v. Jacoby,* 162 N.W.2d 377, 382 (N.D. 1968):

"Existing law at the time a contract is entered into, covering the subject-matter of a contract, becomes a part of such contract and must be read into it as if its provisions were set out in full in the instrument itself."

*Rettig v. Taylor Public School Dist. No. 3,* 211 N.W.2d 743 (N.D.1973); *Permann v. Knife River Coal Min. Co.,* 180 N.W.2d 146 (N.D.1970); *Lillethun v. Tri-County Elec. Co-op., Inc.,* 152 N.W.2d 147 (N.D.1967); and *Seher v. Woodlawn School Dist. No. 26,* 79 N.D. 818, 59 N.W.2d 805 (1953). Therefore, provisions of relevant sections of the North Dakota Century Code that were in effect in April of 1977, including those in §§ 15–47–26 and 15–47–38, N.D.C.C., are part of Storbeck's employment contract and must be considered as though the statutory provisions were set out in full in the instrument itself.

█ Pursuant to § 15–47–26, N.D.C.C., as it existed in April of 1977, Storbeck was not entitled to the ten-days' notice of renewal provided for in § 15–47–38. These statutes conflict with the ten-day notice requirement set forth in Provision No. 3 of the contract, which was based upon § 15–47–38, N.D.C.C., as it existed in 1971. Because there is an ambiguity between the contract as executed and the existing law relating to the subject matter at the time the contract was entered into, we will attempt to determine what the parties intended to include in their contract.

It is doubtful that either Storbeck or the Board considered Provision No. 3 of Teachers' Contract Form 17 when they entered into the contract. The Board and Storbeck agreed to the general terms of their proposed employment contract and the Board then authorized Storbeck to draft the contract. Storbeck chose to use the 1971 version of Teacher's Contract Form 17, and both parties signed it.

Although Provision No. 3 purported to state certain rights and obligations provided for in § 15–47–38, N.D.C.C., there is no evidence that the parties actually relied upon the ten-day notice provision. It is more likely that Storbeck and the members of the Board, all of whom should have been familiar with the current statutes relating to the employment and discharge of school district employees, intended that the contract would be governed by the currently effective provisions of the relevant sections

of the North Dakota Century Code at the time of the execution of the contract.

We conclude, because Storbeck chose to use the 1971 version of Form 17 for the contract which contained a provision of law no longer applicable to superintendents, that it would be unfair to allow him to prevail because of an ambiguity that existed on the Form 17 contract form which he chose.

We hold that Storbeck was not entitled to ten days' notice that his contract would not be renewed pursuant to Provision No. 3 of the 1971 contract form. We further hold that the Board gave Storbeck proper notice in writing on April 14, 1978, that his contract would not be renewed.

Because we have determined that Storbeck's contract was properly terminated pursuant to the North Dakota Century Code and the contract itself, we conclude that his contract was not automatically renewed pursuant to § 15–47–27, N.D.C.C.

The order of the district court is reversed, the preliminary injunction is dissolved, and the case is remanded to the district court for disposition consistent with this opinion.

ERICKSTAD, C. J., and SAND, VANDE WALLE and PEDERSON, JJ., concur.